IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEROME D.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:21-CV-396 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jerome D. ("Jerome") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Jerome alleges that the Administrative Law Judge ("ALJ") erred by failing to properly consider a consultative physician opinion regarding his impairments, and by failing to properly consider his subjective statements and activities of daily living. I agree that the ALJ's analysis of the consultative examiner's opinion is not supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING** Jerome's Motion for Summary Judgment (Dkt. 15), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 17), and **REMANDING** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court's review is limited to determining whether substantial evidence supports the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

Commissioner's conclusion that Jerome failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's decision fails to properly explain why he discounted the consultative examiner's opinion.

## CLAIM HISTORY

Jerome filed for DIB in November 2018, claiming that his disability began on November 4, 2018. R. 15. Jerome's date last insured was December 31, 2022; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 18. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Jerome's applications at the initial and reconsideration levels of administrative review. R. 66–125. On November 24, 2020, ALJ Jeffrey Scheuler held a hearing to consider Jerome's claim. R. 36–65. Counsel represented Jerome at the hearing, which included testimony from vocational expert Asheley Wells. On February 2, 2021, the ALJ entered his decision analyzing Jerome's claims under the familiar five-step process[3] and denying his claim for benefits. R. 15–29.

The ALJ found that Jerome was insured at the time of the alleged disability onset and that he suffered from the severe impairments of brain aneurysm (subarachnoid hemorrhage), history of cocaine abuse, and diabetes mellitus with peripheral neuropathy. R. 18. The ALJ determined

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 18–21.  The ALJ concluded that Jerome retained the residual functional capacity ("RFC") to perform a range of sedentary work. R. 21.  Specifically, Jerome can lift and carry twenty pounds occasionally and ten pounds frequently; stand/walk for two hours and sit for six hours with an at-will sit/stand option; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl.  The ALJ determined that Jerome must avoid all exposure to hazards, and needs a job that does not require driving a motor vehicle.  He can perform work with simple, routine, repetitive tasks in a work environment free of fast-paced production requirements (such as assembly line work where others' work is dependent on claimant), involving simple work-related decisions, few if any workplace changes, and occasional interaction with the public and co-workers. R. 21.

The ALJ determined that Jerome is unable to perform his past relevant work as an electrician helper. R. 27.  However, the ALJ determined that Jerome could perform other work in the national economy, such as addressing clerk or document preparer. R. 28. Thus, the ALJ determined that Jerome is not disabled. Id.  Jerome appealed the ALJ's decision and the Appeals Council denied his request for review on May 10, 2021. R. 1–6.

## ANALYSIS

### I. Medical History

Jerome suffered a brain aneurysm on November 4, 2018.  Jerome underwent coil embolization the following day, and was hospitalized for over a month thereafter.  As a result of the aneurysm, Jerome demonstrated cognitive deficits, difficulty with mobility, and fatigue.  Jerome was discharged to inpatient rehabilitation on November 27, 2018. R. 475.  Jerome

4

continued to have cognitive impairments, difficulty performing independent activities of daily living and novel tasks, and difficulty planning, organizing and executing. R. 462.

Jerome was discharged from inpatient rehabilitation on December 14, 2018, with restrictions of lifting less than twenty pounds for four weeks, activity as tolerated with an assistive device, no driving or operating machinery, and a recommended diabetic diet. R. 490. James Mulina, M.D., stated that Jerome "will likely need to be on disability due to severe cognitive impairment and would not be suitable to return to work as an electrician for 12 months or greater while he continues to recover from his brain injury." R. 486. On December 17, 2018, Jerome continued to demonstrate impairments in recent memory, recall, immediate memory, insight/safety awareness, impulsivity, problem solving and reasoning, and attention. He had occasional periods of agitation, sexual inappropriateness, confabulations and disorientations. He tested in the moderate cognitive communication impairment range. R. 493. Jerome continued to need assistance with all activities of daily living including finances, medications, cooking, cleaning, and decision making. Id.

Jerome saw Biraj Patel, M.D., at the neurointerventional radiologic clinic on December 21, 2018. Dr. Patel noted Jerome's "remarkable recovery neurologically." R. 285. Dr. Patel found that Jerome still had issues with short-term memory but is able to perform all of his activities of daily living and look after his own affairs. Id. On December 27, 2018, Jerome noted difficulty with balance but reported no falls. R. 283. He was discharged from physical therapy on January 22, 2019, with safe and independent mobility. R. 1454. Jerome reported that he could get in and out of bed easier, and perform tasks such as getting into and out of the bath, putting on shoes or socks, lifting objects from the floor, and going up or down ten stairs. R. 1455.

Jerome was discharged from speech/language therapy on February 26, 2019. Jerome continued to have short term recall issues, but his long-term memory was intact. He demonstrated good judgment and reasoning skills, but was impulsive. R. 1502.

## II.   Medical Opinions

On June 10, 2019, Jerome underwent a consultative examination with Roger DeLapp, Ph.D. R. 1566. Jerome reported that he could bathe and dress himself, shop for groceries, and make simple change from a dollar. He reported problems remembering to do chores. He played chess, checkers and scrabble for recreation. Jerome reported feeling uncomfortable in public spaces. R. 1568. On examination, Jerome was cooperative, made good eye contact, had spontaneous and logical speech and appropriate thought process. Id. Jerome's mood was apathetic and his affect was blunted. Jerome's capacity for attention and concentration measured at the 6th percentile, and his processing speed measured at the 14th percentile, both of which were statistically significant weaknesses. Jerome reported the month as February, rather than June, and incorrectly reported his age by two years. Dr. DeLapp noted that Jerome had orientation problems with time. R. 1569. Dr. DeLapp concluded that Jerome,

> could not currently be in regular attendance at work, or work on a consistent basis. Special supervision would not help this. He could not complete a normal workday or work week without interruptions from the after affects [sic] of his aneurysm. He could not successfully interact with supervisors coworkers or the public or negotiate the competitive stress of the workplace.

R. 1570.

On June 19, 2019, Leslie Montgomery, Ph.D., reviewed Jerome's records and determined that he was capable of understanding, remembering and carrying out one to two-step instructions; would work best in a setting with limited contact with the general public; and would be limited to working in a setting with few changes in work procedures. R. 81–83. Howard

Leizer, Ph.D., reviewed Jerome's records on January 7, 2020, and agreed with Dr. Montgomery's conclusions, finding that Jerome could understand, remember and carry out simple, repetitive instructions in a low stress setting. R. 101.

On August 12, 2019, state agency medical consultant Michael Koch, M.D., reviewed Jerome's records and determined that he was capable of light work with occasional climbing ramps and stairs; never climbing ladders, ropes or scaffolds; and frequent balancing, stooping, kneeling, crouching and crawling. R. 79–81. On January 7, 2020, David Bristow, M.D., reviewed the record on reconsideration and agreed with Dr. Koch's proposed limitations. R. 97–99.

### III. ALJ Decision

The ALJ set forth Jerome's treatment history in his decision, and determined that Jerome's impairments could be expected to cause his alleged symptoms; but that his statements concerning the intensity, persistence, and limiting effect of those symptoms were not entirely consistent with the evidence of record. R. 22–25. The ALJ found no persuasive opinions in the record suggesting greater physical or mental limitations than the RFC. R. 25.

The ALJ found the opinions of the state psychological consultants persuasive, noting that the record supports moderate limitations in all functional domains, limiting Jerome to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving simple work-related decisions, few if any workplace changes, and occasional interaction with the public and coworkers. R. 26. The ALJ found Dr. DeLapp's opinion unpersuasive, noting that it is inconsistent with his own examination, as well as the reports of

7

other providers. R. 26. The ALJ also found the opinions of the state agency medical consultants to be unpersuasive, given Jerome's reported residuals from his aneurysm.

The ALJ found that Jerome's subjective complaints are out of proportion with the "weak and inconsistent objective medical findings" in the record, but the ALJ limited Jerome to sedentary work with postural and environmental limitations. R. 27.

### IV.  **Physician Opinion**

Jerome asserts that the ALJ improperly discredited Dr. DeLapp's opinion and failed to provide a foundation or explanation for his conclusion. Pl. Br. Summ. J. p. 8. Jerome notes that Dr. DeLapp is the only physician in the record tasked with examining Jerome and determining his limitations. Id.  The Commissioner asserts that the ALJ correctly assessed the persuasiveness of Dr. DeLapp's opinion, and his decision is supported by substantial evidence.

Jerome filed his application in November 2018; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions in his case.[4] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the ALJ will consider five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion. The most important factors considered are supportability and consistency.[5] Id.  The ALJ is not

---

[4] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017.

[5] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

required to explain the consideration of the other three factors. Green v. Saul, No. 5:20-cv-1301-KDW, 2021 WL 1976378, at *6 (D.S.C. May 18, 2021). However, when "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Here, the ALJ provided a limited explanation as to why he found Dr. DeLapp's opinion unpersuasive, stating only, "[t]he opinion is inconsistent with his own examination, as well as the reports of other providers. In February 2019, a therapist noted some issues with impulsivity and short-term memory, but the claimant was also deemed fit to be discharged from therapy and work towards returning to the workforce." R. 26. These two brief statements do not explain how the ALJ considered or determined the supportability and/or consistency of Dr. DeLapp's opinions.

9

Simply stating whether an opinion is or is not "supported by" or "consistent with" the record does not qualify as *explaining* how the factors of supportability and consistency were considered for a medical source's opinions. It is the explanation that is missing here. "Not only must an ALJ consider the five factors set forth in the regulation, the ALJ must—at a minimum—explain his or her consideration of the supportability and consistency factors." Garrett v. Kijakazi, No. 1:21-cv-46, 2022 WL 1651454, at *2 (W.D.N.C. May 23, 2022) (citing Danny Z. v. Saul, 531 F. Supp. 3d 871, 883–84 (D. Vt. 2021) (explaining that failure to "explicitly discuss the supportability and consistency of medical opinions" can result in remand)); see Crystal W. v. Kijakazi, No. 5:21-cv-27, 2022 WL 2953704, at *5 (W.D. Va. July 26, 2022) ("Although the ALJ discussed the consistency and supportability of Dr. Prieur's opinion, he failed to offer an adequate explanation for his findings with respect to the consistency of that opinion."). Indeed, in Gloria M. v. Kijakazi, this court stated, "despite the regulatory changes regarding the evaluation of medical opinions, SSR 96-8p continues to provide that where 'the RFC assessment conflicts with an opinion from a medical source, the [ALJ] *must explain* why the opinion was not adopted.'" No. 4:20-cv-44, 2022 WL 909043, at *7 (W.D. Va. March 28, 2022) (quoting SSR 96-8p, 1996 WL 374184, at *7 (emphasis added)). If the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Michael B. v. Saul, No. 7:19-cv-751, 2020 WL 7497803, at *7 (W.D. Va. Dec. 21, 2020) (citing Monroe, 826 F. 3d at 190).

Here, the ALJ stated that Dr. DeLapp's opinion was "inconsistent" with his own examination and the reports of other providers; however, the ALJ did not explain which of Dr. DeLapp's conclusions conflicted with his examination findings. The ALJ also did not proffer which reports of other providers in the record differed from Dr. DeLapp's findings, or how he

10

arrived at that conclusion. The ALJ's recitation of Jerome's treatment history alone does not provide the missing explanation. Jerome unquestionably suffered a brain injury that impaired his cognitive and functional abilities. The ALJ determined that Jerome had ongoing moderate limitations in all functional domains R. 25. Thus, the ALJ's decision to discount Dr. DeLapp's conclusion that Jerome would have difficulty with regular attendance, completing a normal workday, interacting with others, negotiating competitive stress, and working on a consistent basis requires some explanation.

The ALJ also did not explain why he referenced one specific speech therapy record in February 2019, or how that record was inconsistent with Dr. DeLapp's conclusions. This conflict is not clear on the face of the ALJ's decision, as a speech pathologist's finding that Jerome was "fit to be discharged from therapy and work towards returning to the workforce," does not necessarily contradict Dr. DeLapp's findings that Jerome could not be in regular attendance at work, could not work on a consistent basis, could not complete a normal workday or workweek without interruptions, could not successfully interact with others at work, and could not negotiate the competitive stress of the workplace.

"If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain

11

the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. Here, the ALJ's reasons for discounting Dr. DeLapp's opinion are insufficiently explained and deprive the court of determining whether the decision is supported by substantial evidence.

## **CONCLUSION**

For the reasons set forth above, I **RECOMMEND** entering an order **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Jerome's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

objections, including the waiver of the right to appeal.

                                         Entered:  February 8, 2023

                                         *Robert S. Ballou*

                                         Robert S. Ballou
                                         United States Magistrate Judge

13